representing Mr. Navidad Marcos. This is a obviously a 1326 case and we're talking about whether or not an aggravated felony, in this case California H&S 11379 is overbought or not. And I think there's two cases that inform our analysis, that's Rivera-Sanchez cited in Baris and Corona-Sanchez. Now, the fact that it's overbought has been conceded by the government in this case and that's found at their red brief at page 7. So really what we're looking at now is, as Corona-Sanchez says, once we have found the statute's overbought. And I think Rivera-Sanchez tells us the same thing because the statutory language of both 11360, which Rivera-Sanchez found was overbought, and 11379 are in fact identical except for one word. And I would draw the Court's attention to the excerpts of the record, page 50, and you can compare the language because 11379 is charged in count one and 11360 is charged in count three of the information we have in the record and they are absolutely identical. I don't think anybody is disputing this. I think the question is whether or not on the facts of the record presented in this Court, the evidence presented is enough to narrow it down. That's really all. Exactly, Your Honor. That's what we're talking about. Tell me, there's a reference to the State PSR in the transcript, the State PSR, but I didn't find it in the record. Is it? No, I don't believe the State PSR was ever actually submitted in this case. What my memory is is that they referenced it, but I believe that where that comes into our case is that the Federal PSR incorporated that information into its report of that criminal history. And that's where that information comes from, but I don't believe the State PSR was ever presented in this case. It's a referential. I thought that the transcript of the sentencing hearing seemed to say that the judge looked at it. Your Honor, I don't believe that's correct, but I wasn't there, so I'm not going to. We'll ask the government. But you are aware of location? No, Your Honor, I don't believe it's in the record. That's my understanding. But Corona Sanchez tells us when we're using a modified categorical approach, the whole purpose of that is to be able to unequivocally determine whether or not this particular conviction qualifies as a predicate felony under 1101-843. And in this case, well, in Corona Sanchez, the en banc court says we can look at a number of documents and determine that. The first one that we have here is the information. And Corona Sanchez says, well, that's not enough. And this information is a perfect example of that because what it does, it pleads the whole statute in the language. So it doesn't distinguish anything for us. It's the lazy man's information. I'm sorry, Your Honor? It's the lazy man's information. Yes, it is. It doesn't plead specific facts. It pleads the language of the charging statute. So we... Really, all we have is the abstract of judgment. Right. And maybe the pre-sentence report, the state pre-sentence report, if the court looks at that. Well, Your Honor, I think... The state pre-sentence report seems to have referenced it in its brief. Why isn't the notation in the pre-sentence, in the abstract of judgment, transport slash sell, cunt, sub? Well, I think we can agree that cunt, sub means controlled substance. Sure. And that's part of the statute. That's the difference between 316 and 379. One's marijuana, one's controlled substance. But what we have here are the first two words of the statutory title. That's not telling us what elements he pled to. Unless he pled to both transportation and selling cocaine. I don't think so, Your Honor. I think there's a little square in the abstract. All it's telling us is the title of the statute. That's true. But you take the position that this is a description of the title. Right. But it could also mean that he was found guilty of transporting the substance and selling. Now, you shake your head and say no. Why is that necessarily so? Well, it isn't. It isn't either way. And that's the problem, Your Honor, is that we need to have an unequivocal determination here that he was, in fact, convicted of one of the generically defined aggravated felonies. And we don't know that. Now, Corona Sanchez tells us really what we need to look at. And I think this is true in a lot of these cases. We either need to look at the plea agreement where it will have a factual basis. This is what he did. I transport, I sold, I solicited, whatever it might happen to be, or the transcript of the plea. I mean, it's like anything, as Judge Kuczynski says, the lazy man's pleading, what the gentleman actually admitted to as a factual basis for that plea, which gets us to the elements, is what we're looking for. And that's why Corona Sanchez tells us we need to look at either the plea transcript to see what the factual basis was or the plea agreement, which will generally tell you that very same thing. But here we have neither of those documents, and we cannot make an unequivocal determination based on a title. Why don't we have them? Well, that's because the government didn't get it, Your Honor. And it is their burden. I mean, any time we want to elevate an offense level, the government's burden is to bring those documents to sustain that. I mean, that's their job. You're suggesting they're there, but we don't have them. Well, they may or may not be there, Your Honor. I have no clue about that. Well, I thought you said that the government didn't get them, which would be, in my judgment, an assumption that they're actually there. Rather than letting something be done by slip or games, we could vacate, remand, and have a hearing by the district court to find out if they're really there. Well, no. If, in fact, they are. I'll go this way, Judge Wallace. They're not in the record. I understand that. And I don't know why they're not in the record. But all I assume is that that's the government's burden. They didn't produce them. And they may well let a rehearing. I mean, you know, that's what happens in these things. This court vacates the sentence and sends it back, and they get the second-bited apple to go get the documents if they can. And if they can't, then we're left with this doesn't qualify under either Rivera-Sanchez or Corona-Sanchez. Because if you can't make an unequivocal determination, then the government doesn't get to bounce this guy's sentence from 10 months to 46. Unless the court has a specific question, I'll reserve whatever time I have. 45 seconds. We'll hear from the government. Good morning. Brian Sullivan, assistant U.S. attorney here at Reno, Nevada, appearing on behalf of the government. I was looking while you were asking the question, Judge Kaczynski, about whether or not Judge McKibben had the state, the Kern County PSR. And I think it's clear in the record that he did, specifically at excerpts of record, page 87. They're talking about the panel where the drugs were hidden in a panel of the car. And that's what my memory of reading the state PSR is, is that's where these drugs were found, hidden. Also, there's reference to the state. Wait a minute. Before you leave that, 80 what? 87. Excerpts of record, page 87, Judge Wallace. And there, say again? And on that page, Judge. What line are you reading from? Pardon me? What line are you reading from? Probably starting at line 8. Line 9. One thing that is fairly persuasive, that line, Judge? Right. That the pre-sentence report, it describes the fact that these drugs were in the panel of a car. What's the next sentence, though? The next sentence says, but there's nothing in the record to show that the defendant adopted anything that was in that report, agreed to anything that was in the report. What he actually entered his plea to under the statute. He entered a plea of guilty in the statute, but we don't know at this point, because we don't have the plea canvas and we don't have a transcript of it, or the plea agreement, what he actually pled guilty to as to the elements. That's right, Judge Thomas. That's right. This was the second hearing. There were actually three sentencing hearings held in this particular case, which I think the record demonstrates that Judge McKibben did exactly what Taylor and his progeny required him to do. They were trying to find the records, the judicially noticeable facts. I guess, getting back to my question, is the state pre-sentence report in the record? Yes. This demonstrates that it was in the record, because Judge McKibben is referring to it. The parties are talking about it. He saw it. He saw it, but is it in the record? I'm sorry. He saw it, obviously. But is it in the record? Was it entered in the record of the case? Sometimes judges see pre-sentence reports and they don't put it in the record. I can't answer that precise question. I know that the Assistant Justice ---- Let me ask my question again, okay? This is now the third time. Is the state pre-sentence report in the record? I can't answer that question. All I know is that ---- You answered yes the last time I asked. Pardon me? You said yes the last time I asked it. Well, I said yes because they're talking about it here. I correct myself. They're talking about it here, Judge, on page 87. The Assistant U.S. Attorney at this particular hearing ---- The answer is no? I don't know, Your Honor. The answer is I don't know. I know it's been exhibited in the ---- It might be in the record? Pardon me? It might be in the record? Yes. It's referred here and at page 103. But you can't cite us. You don't know. I can't say was it admitted into evidence. No, I can't answer that question. But I don't think that's the telling piece of evidence here, the judicially noticeable facts here. I think basically the ---- So should we strike the parts of your brief that refer to it? Pardon me, Judge? Should we strike the parts of your brief that refer to it, like on page 9 of your brief? I didn't understand. I couldn't hear. I don't hear ---- Should we strike the portions of your brief that refer to the pre-sentence? I'm not necessarily agreeing to that, Judge Kuczynski, because ---- I'm asking you a question. Should we or should we not? No. You're referring to things not in the record or that you don't know are in the record? You don't give us a citation following a discussion of the state pre-sentence of orders. The citations to the record you give us are to ---- Where they're talking about the state PSR. Where they're talking about it. They're not talking about it actually being in the record. Okay. Then if that's the Court's position, let's take the position, assuming for sake of argument it is not in the record. Our position, the government's position here is that, first of all, as we must concede, the statute, I agree with counsel, the statute is overbroad. But I think there is something in the record here that can guide the Court and did guide Judge McKibben. I think it was right on the mark when he had the certified copy of the Kern County abstract of judgment. It has ---- All right. Let me talk about that for a minute. I know in Nevada you probably don't see those abstract of judgments much. But in California we see them all the time. And I've got to tell you, it is no different from any other abstract of judgment generically because it appears what happens in California, and it's in part of Casar's, Bravo, and almost every other case I've seen of it, the wording is the same regardless of the crime. In other words, the abstract refers, I think Mr. Powell was correct on this, they just enter the title. So it's difficult for me to see how we can make a finding of fact based on that as to the underlying charge. Casar's, Bravo, was exactly the same. I've seen lots of cases where they entered exactly the same. Is there anything else you have that indicates they just didn't enter the title? No. Okay. No, Your Honor. I can understand why Judge McKibben might rely on it, but he doesn't sit, he doesn't see probably a lot of these in Nevada. Well, I can agree with what you're saying, Judge Thomas. I have looked at some Superior Court documents and California documents. They always say sales slash case court, right? You have more experience than I do, and I really don't like looking at California documents. But I think that based on this Court's precedent on the judicially noticeable facts, what can you look at, what should you look at, the judgment is, after all, the final document in the case. I mean, it's telling, this is the culmination of a case. This is what happened. I agree that the information in Kern County pretty much repeated all of the statute of 11379A, and it had a lot of the words, like we do in our Federal indictments sometimes. It's a good guess, but the cases, I think Taylor, certainly our cases talk about unequivocal, talk about looking at judicially noticeable facts that unequivocally allows us to determine, allows us to determine unequivocally which portion of the conduct defined by the statute the defendant actually pled to. And I just have a hard time. I mean, I think it's a plausible argument that, or not, that the description in the abstract of judgment refers to actual conduct, but it's also plausible inference that it doesn't. It just does what Judge Thomas suggests, which is just gives a generic description. And frankly, I don't, you know, I don't know which is. Well, I can't. How can I say that this is unequivocal? You agree unequivocal is a test. I agree, Your Honor. I agree. I mean, let's say a law depended on it and he had to swear under oath that, in fact, what happened here when it says transport, all of that, that it actually meant that's his conduct rather than the title of the statute. Could you do it? Would you put your license on the line in attesting what actually happened in this case? If you looked at nothing more than this piece of paper, would you be willing to do that? You're really pushing me to the line this morning. My job. I think, here's what I think, Your Honor. I think that based on the precedent. Are you declining to answer? Based on the precedent of this court where you have to look at something. I'm asking you as a fact, okay? If you had to put your license on the line, you had to warrantee to me, yes, Judge, this is what happened here. And I could check it out. And if you were wrong, you would lose your license. Would you be willing, based on this piece of paper? Yes. I think so, Your Honor. Based on the fact that we have a certified copy of a judgment from a superior court. Would you be willing to infer what actually happened in this case? Well, a superior court judge signed a document that says sell. Well, but they always do. I don't think an attorney would be risking his license by saying, oh, golly gee whiz, maybe it was a sale and maybe it was only transportation. I guess we can't trust a certified copy of a document from a superior court. I don't think I'm risking my license. So what's your reluctance for a remand then? Pardon me? If you're so certain, why are you reluctant to remand and have an open hearing and prove it? Actually, Judge Thomas, I suppose from a perspective, from the government's perspective of winning or losing a case, that's not such a bad thing. But I don't think a remand is necessary when Judge McKibben held three separate hearings. He did, but he relied on a document that we've seen many times before that is a generic document. And that's my problem with the case. I don't see any difference between this and what we saw in Casar's Bravo. And Mr. Powell, I know, would like us to just vacate it and not send it back for a hearing, but our case law seems otherwise. So you've got the cards here. You can play them at re-hearing, can't you? But the Casar's case, the difference between Casar's Bravo was there was a federal pre-sentence report only. Right. And what did it reference? Here we have more than that. We have the type of documents that this court says the district court should be looking at. If we can't trust a superior court from any district court judgment. It is certainly the kind of document that we said you can look at, but you look at a document in order to get information from it. Right. Having the right kind of document that says the wrong thing doesn't help you. And having now, now that we're looking at the right kind of document, you have to be able to look at it and be able to tell unequivocally that the conduct to which the defendant pled is the conduct that is within the federal definition. Well, it would be nice, like in the Edamone case. Somebody cited the Edamone case, which says at the end that was a case about sexual act versus sexual contact. And they said, gee, if they would have charged a sexual act, which is skin-to-skin touching, and the guy pled guilty to the precise skin-to-skin contact, then we would know with a certainty. Well, we don't have that. California changed its statute, but the statute has a whole bunch of, criminalizes a lot of behavior that's not cognizable for an enhancement. That's the problem. And including transportation for private use, including solicitation. All right. Let me read you from Casares-Bravo. Casares-Bravo pled guilty to a charge of sales-slash-transportation of marijuana under this section. He pled again to the two counts of sales-slash-transportation of marijuana. That wasn't enough for us. Judge Thomas, I realize that Casares-Bravo says that. Yes, it does. But it was only based on the federal PSR. I'm just saying, if that wasn't enough for us in Casares-Bravo, what changes it here? A certified copy of a superior court judgment. In that case, there was only the federal PSR. Right. Okay. And this Court says you can't just rely on the PSR. Granted. But if we'd had the judgment in front of us that just said that, I can't imagine that our decision would have been any different. I think it would have been different. And I'm asking it to be different in this case for the reasons that I've stated, because we have something more certain in this case. I'm going to say happy Casares-Bravo. I've used up my time, Judge Wallace. Are you asking me another question or asking me to sit down? I'm trying to squeeze in. We all have questions for you. You referred to the excerpt from record, the discussion of Judge McKibbin referring to a pre-sentence report. And I'm trying to find out what pre-sentence report he's referring to. The state one, the Kern County one. Those two pages. Excuse me. How do we know that? Because of the context of the conversation. The first one we've already discussed, which is on page 87, and it talks about the panel of the car. And that's exactly what the ‑‑ which in the sealed excerpts of record, that state PSR from Kern County, it talks about the drugs being in the panel of the car. Oh, I understand that. But there was a federal PSR. Yes, there was as well in this case, of course. Did it discuss the facts of that? I think in the ‑‑ I can't answer that question, Judge Wallace. Let me answer it for you. I've got it right in front of me. It did, in fact. And it talks about the very thing that Judge McKibbin is talking about, about where the drugs were found. It's in the PSR at excerpt for record 26. It's a sealed document, but I'm sure you have a copy of it. Yes. So why are you so sure there's a state one when there's the information that Judge McKibbin referred to appears to be directly out of the federal PSR? Well, they got it from the state PSR. How do I know that? They got it from somewhere. They had to have gotten it from the state PSR. That's the problem, isn't it? But I'm not asking this court this morning to rely on the state PSR. Judge McKibbin himself said, I'm not relying on the state PSR. If you'll let me ask my question. Go ahead. I understand what you're relying on. My question is what Judge McKibbin was relying on, and I don't understand why you say that you're sure that he was relying on the state PSR. If he was and it wasn't included in the record, which I don't find at least in the excerpt, then maybe we need to remand. But I see that his information appears to come from the federal PSR, so I wondered why you're sure there's a state PSR. Because during the second sentencing hearing, Assistant U.S. Attorney Don Gifford was trying to convince Judge McKibbin that this state PSR from Kern County was reliable because the superior court judge had signed it. And Judge McKibbin is saying, well, that's all well and good, but how do I know that his signature just doesn't mean read, I just read it. I'm not putting my imprimatur necessarily on the information. I read it. I got it. I read it. And that's why I am suggesting that the judge had it. Okay. That's a fair argument. So there is something that's not in the record, at least not in the excerpt that was set up. It's in the excerpt, Your Honor. The state PSR? Well, I mean the reference to it. I understand. The state PSR. The state PSR was submitted by defense counsel in the sealed excerpts of record. I have the sealed excerpts of record and don't have the state PSR. That's what I'm trying to find is the state, if there is a state, if he is referring to a state PSR. I have it as the first document in the sealed documents, pre-sentence report. I'm sorry. It's the second document from Kern County. It looks like almost the entire document. What is the page number where it starts? It's page number 53 in the sealed excerpts of record, Your Honor. Interesting. I don't have it. There's two excerpts of record. There's the regular one and then the one that's called excerpts of record, sealed confidential documents. I'm sorry for the confusion. I have the federal, but I don't have the state. It's the second one, and it starts on page 53 of that excerpt. Information officer's report? Yes. It's styled in the Superior Court of California State County of Kern. It's got a file stamp of July 29, 1994. Page 53. Yes. Okay. But Judge McKibbin, what did he ñ how did he hold in relationship to that document? He said, I'm not relying on it. On page 103 of the regular excerpts of record, he says, I know what that says. I'm not going to rely on it necessarily. What I got here, what he was hanging his hat on and what I'm hanging my hat on here this morning is the Superior Court judgment. He says, the judge could have put just transportation. I realize what you said, Judge Thomas, about I've seen a million of these, but I know that box is not that big, and you can only fit so much in. That's what they refer to the ñ you know, that's what they enter this judgment as. I mean, when we enter a mandate here, the clerk's office says, make sure you make clear what it is. And so you put the tagline on it. And they put the conviction on it. They could have just put transportation or importation in there, and they didn't. They chose to put transportation slash sell. Yeah. That's what they always do. I think we have to be able to rely on that. And I've rethought my position, Judge Kuczynski. I'd risk my license on it. Yeah. Well, don't get too hasty because it looks to me as if the underlying facts may support a transportation for personal use, which is not covered by statute. Any other questions by the Court? I know I've ran way over my time, but I wanted to answer the Court's questions. No, sir. Thank you. Just briefly. Now, this is the report of what the ñ that's the probation officer's report from California. I don't think that's any different than a federal PSR, really. The information in there is the same. Let me ask you a question. It's not brief, so this is unfair. At the beginning, let me tell you, this is an unfair question. But let me ask the question this way. Very often when defendants are sentenced, a PSR comes out. They disagree with some of the factual determinations. They object. District Court decides whether or not you'll hold a hearing or not. In this particular federal PSR, there's a description of this prior situation. And there, there's language that the federal probation officer says would tie him in to a felony that would count. Now, we have said we are not going to rely on that. I understand that. But suppose the defendant doesn't object to it. Can the district judge then rely on that information as a factual determination to determine whether or not the prior felony counts? Now, as I understand it, Judge Wallace, okay, objecting to, in this case, which we did, a 16-level enhancement based on that particular set of facts, is that enough of an objection? Or do we have to say these facts are specifically wrong? I mean, see, that, I think, when we object to that, we're objecting to the whole aggravated felony situation based on that because it's not clear enough, we don't believe, as a factual matter, because we don't look at the facts. Okay. But in this particular case, did counsel object to the description of the felony that was involved? No, Your Honor, because I think she took the position that we don't look at the facts of the case, the facts of the conduct. And that's what Taylor says. We don't look at those. We look at the specificity. Here's the problem I have with it, is that ordinarily in those cases, those are State cases. Here we have a Federal PSR. Sure. And the Federal PSR frequently has factual determinations which the defendant is there and can object to. And I'm just wondering whether that rule applies here. If the factual determination indicates it is a felony that counts and the defendant then doesn't object to that factual rendition. Well, I think the difference is this, Judge Wallace. Okay. There's certain facts in the Federal PSR that become relevant conduct that gets you other specific offense characteristics or other level enhancements, leader. I mean, there's a whole range of that stuff. And if you're nailing that one that's a factual determination specifically from the conduct that you did, then, yes, you need to object to that, and we do, because there's a penalty you pay for that if you don't object and contest it. But in this case, we're looking at the statute first, which we don't look at the facts. This is different from Federal sentencing. And so what I'm saying is, is that I think my bottom line is this. You know, we go through the system. The facts can be reported one way or the other, but what you ask, the factual basis of your plea may not represent that, that at all. I mean, that's the whole point why we don't use the PSRs. It's because this may be the, at least the probation officer's view of what went down, but what when, in a plea case, when the defendant gets up there and says, judge, the judge says, okay, you're pleading guilty. Tell me what you did that makes you guilty of this crime. And the guy says, well, I did this or this. And that's what really we need to see in these cases. I mean, it will be in the plea agreement. It will be on the case. But it's not in the plea. Or in the plea itself. I mean, basically the idea is you're not trying to turn these into second trials on what happened in the underlying offense. You're trying to say what did the defendant admit to. Sure. What was the plea agreement. Exactly, because that's the only thing that really tells us if this qualifies in the statute that it's brought. And I don't think the PSR recitation of facts has a direct bearing on what he, what elements he admitted when the judge found him guilty. And I think that's why Corona Sanchez says that's what we look at, the charging document and the plea agreement. The charging document and the plea transcript. That's why we need those things, because you can charge a lot of stuff. I mean, I've argued this in the context of whether or not 1326s are separate crimes. There's conjunctive. You can enter. You can be excluded. You can so on and so forth. You can be removed. But if in every one of these, if you go look at what the conduct of the defendant, he might have admitted to being deported. He might have admitted to being one of the disjunctive different elements. And that's the whole point of getting the plea transcript. Okay. Thank you. The case is argued ostensibly. The next argument on the fourth case on the calendar, because counsel in the second third case has to be put to the end of the calendar. So we'll now hear United States v. Zone.
judges: Wallace, Kozinski, Thomas